IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-3747-NRN

KEVIN O'ROURKE,
NATHANIEL L. CARTER,
LORI CUTUNILLI,
LARRY D. COOK,
ALVIN CRISWELL,
KESHA CRENSHAW,
NEIL YARBROUGH, and
AMIE TRAPP,

Plaintiffs,

v.

DOMINION VOTING SYSTEMS INC., a Delaware corporation,
FACEBOOK, INC., a Delaware corporation,
CENTER FOR TECH AND CIVIC LIFE, an Illinois non-profit organization,
MARK E. ZUCKERBERG, individually,
PRISCILLA CHAN, individually,
BRIAN KEMP, individually,
BRAD RAFFENSPERGER, individually,
GRETCHEN WHITMER, individually,
JOCELYN BENSON, individually,
TOM WOLF, individually,
VERONICA DEGRAFFENREID, individually,
TONY EVERS, individually,
ANN S. JACOBS, individually,
MARK L. THOMSEN, individually,
MARGE BOSTELMAN, individually,
JULIE M. GLANCEY, DEAN KNUDSON, individually,
ROBERT F. SPINDELL, JR, individually, and
DOES 1-10,000,

Defendants.

**GOVERNOR TOM WOLF'S AND ACTING SECRETARY VERONICA
DEGRAFFENREID'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 1

LEGAL STANDARD ........................................................................................................... 4

ARGUMENT ....................................................................................................................... 4

    I.    This Court Lacks Personal Jurisdiction over Governor Wolf and Secretary Acting Degraffenreid ............................................................................................................... 5

    II.    The Eleventh Amendment Divests This Court of Jurisdiction ....................................... 7

    III.    This Court Lacks Jurisdiction Because No Plaintiff Has Standing ................................. 8

    IV.    Plaintiffs Fail to State Any Claim that Could Allow Relief .......................................... 10

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 576 U.S. 787 (2015) .......... 11

*Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070 (D. Colo. 2018) ................................................................................................................................... 15

*Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336 (3d Cir. 2020) ................................ 9, 10, 11

*Brown v. Reardon*, 770 F.2d 896 (10th Cir. 1985) ........................................................................ 10

*C5 Med. Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319 (10th Cir. 2019) ................................. 5

*Cohen v. Waxman*, No. 08-cv-2188, 2009 WL 3390487 (D. Colo. Oct. 21, 2009) ........................ 6

*Curtis v. Oliver*, 479 F. Supp. 3d 1039 (D.N.M. 2020) ................................................................ 13

*Defs. of Wildlife v. Everson*, 984 F.3d 918 (10th Cir. 2020) ......................................................... 8

*Dermansky v. Univ. of Colorado*, 445 F. Supp. 3d 1218 (D. Colo. 2020) ..................................... 4

*Donald J. Trump for President, Inc. v. Boockvar*, No. 20-cv-2078, 2020 WL 6821992 (M.D. Pa. Nov. 21, 2020) ................................................................................................................... 3, 12

*Donald J. Trump for President, Inc. v. Sec'y of Pennsylvania*, 830 F. App'x 377 (3d Cir. 2020) 3, 10, 12

*Edelman v. Jordan*, 415 U.S. 651 (1974) ....................................................................................... 8

*Green v. Mansour*, 474 U.S. 64 (1985) .......................................................................................... 8

*In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058 (Pa. 2020) ............................................................................................................................ 3, 10, 13

*In re Canvassing Observation*, 241 A.3d 339 (Pa. 2020) ..................................................... 3, 10, 13

*In re Nov. 3, 2020 Election*, 240 A.3d 591 (Pa. 2020) ......................................................... 2, 10, 13

*Kelly v. Commonwealth*, 240 A.3d 1255 (Pa. 2020) ...................................................................... 2

*Kentucky v. Graham*, 473 U.S. 159 (1985) .................................................................................... 7

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ............................... 8

*McPherson v. Blacker*, 146 U.S. 1 (1892) ................................................................................... 11

*Metcalfe v. Wolf*, No. 636 M.D. 2020, 2020 WL 7241120 (Pa. Commw. Ct. Dec. 9, 2020) ......... 2

*Mullaney v. Wilbur*, 421 U.S. 684 (1975) .................................................................................... 7

*Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895 (10th Cir. 2017) ............................... 5

*Pa. Democratic Party v. Boockvar*, 238 A.3d 345 (Pa. 2020) ................................................ 3, 10

*Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013) ................................................................ 7

*Republican Party of Pennsylvania v. Degraffenreid*, No. 20-542, 2021 WL 666401 (Feb. 22, 2021) .................................................................................................................................... 11

*Starkey ex rel. A.B. v. Boulder Cty. Soc. Servs.*, 569 F.3d 1244 (10th Cir. 2009) ........................ 7

*Taylor v. Casper City Council Corp. Members*, No. 10-cv-127, 2010 WL 1904541 (D. Colo. Apr. 14, 2010) ............................................................................................................................ 6

*Texas v. Pennsylvania*, No. 22O155, 2020 WL 7296814 (U.S. Dec. 11, 2020) ............................ 9

*Trump v. Degraffenreid*, No. 20-845, 2021 WL 666798 (Feb. 22, 2021) ................................... 13

*Williams v. Utah Dep't of Corr.*, 928 F.3d 1209 (10th Cir. 2019) ................................................ 7

*Wilson v. Pauling*, 457 F. Supp. 3d 965 (D. Colo. 2020) ............................................................ 4

*Wood v. Raffensperger*, 981 F.3d 1307 (11th Cir. 2020) ............................................................. 9

*Zvelo, Inc. v. Check Point Software Techs., Ltd.*, 418 F. Supp. 3d 664 (D. Colo. 2019) ............... 4

**Constitution and Statutes**

25 Pa. Stat. § 3146.5 ................................................................................................................... 14

25 Pa. Stat. § 3146.6 ................................................................................................................... 13

25 Pa. Stat. § 3150.16 ................................................................................................................. 13

U.S. CONST. amend XIV, § 1 ...................................................................................................... 11

U.S. CONST. amend XV, § 1 ....................................................................................................... 12

**Other Authorities**

Department of State, Official Returns ......................................................................................... 4

Letter from Rep. Ryan to Rep. Perry (Dec. 15, 2020) ................................................................ 14

Pennsylvania Governor Tom Wolf and Pennsylvania Acting Secretary of the Commonwealth Veronica Degraffenreid[1] file this motion, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), to dismiss plaintiffs' complaint. As required under Local Civil Rule 7.1(a), counsel for Governor Wolf and Acting Secretary Degraffenreid has conferred with counsel for plaintiffs. Plaintiffs oppose this motion.

## INTRODUCTION

The 2020 election cycle generated a torrent of frivolous litigation, much of it seeking to overturn the results of free and fair elections. As much as any other state, Pennsylvania bore the brunt of that abusive use of courts. A range of parties—from the former president's campaign, to federal and state representatives, to other states, to private individuals—brought meritless lawsuits, premised on far-fetched allegations and misrepresentations about Pennsylvania's 2020 election. This case is no different. Plaintiffs without standing to sue have recycled dubious allegations and legal claims already considered and dismissed across the country. They name as defendants two Pennsylvania officials beyond this Court's jurisdiction, and who are immunized under the Eleventh Amendment. For all of these reasons, this case must be dismissed.

## BACKGROUND

Last year, Pennsylvania held a free, fair, and lawful election in which more than 6.9 million Pennsylvanians voted for President. About 2.6 million of those voters used either a no-excuse mail-in ballot or an absentee ballot. President Biden received about 80,000 more votes than former President Trump. The results were certified, and Governor Wolf signed the Certificate of Ascertainment on November 24, 2020. Compl. ¶¶ 249, 252.

---

[1] Since plaintiffs filed the complaint, Veronica Degraffenreid has succeeded Kathy Boockvar as Secretary of the Commonwealth. Acting Secretary Degraffenreid has been substituted as a defendant. *See* Fed. R. Civ. P. 25(d).

1

Plaintiffs challenge various aspects of that election.[2] Their complaint, however, brings frivolous claims that depend on gross mischaracterizations of Pennsylvania law. The egregious misrepresentations in plaintiffs' complaint are not new.[3] Indeed, as it relates to Pennsylvania, plaintiffs' complaint extensively quotes from earlier cases, without any indication that these plaintiffs have conducted their own investigation. *See, e.g.*, Compl. ¶¶ 219–232, 234–238. Like those earlier cases, the factual predicate for plaintiffs' federal claims against the Pennsylvania defendants is that state officials administered an election in conflict with state law. But that factual predicate falsely represents what Pennsylvania law requires.

Plaintiffs first allege that Pennsylvania officials unilaterally eliminated a statutorily required signature verification process for no-excuse, mail-in ballots and absentee ballots. Compl. ¶¶ 217–219, 232(a). Yet the Supreme Court of Pennsylvania definitively ruled just a few months ago that "county boards of elections are prohibited from rejecting absentee or mail-in ballots based on signature comparison conducted by county election officials or employees." *In re Nov. 3, 2020 Election*, 240 A.3d 591, 611 (Pa. 2020), *cert. denied,* No. 20-845, 2021 WL 666798 (Feb. 22, 2021).

Plaintiffs also allege that Pennsylvania officials authorized counties to contact voters who mailed a ballot with some ministerial error to allow those voters to correct the error, despite a

---

[2] Although plaintiffs filed their complaint on December 22, 2020, they did not serve the Pennsylvania defendants until February 25, 2021.

[3] The allegations in plaintiffs' complaint are indistinguishable from those found in many failed lawsuits. *See, e.g.*, *Texas v. Pennsylvania*, No. 22O155, 2020 WL 7296814 (U.S. Dec. 11, 2020); *Bognet v. Sec'y Commonwealth of Pa.,* 980 F.3d 336 (3d Cir. 2020); *Donald J. Trump for President, Inc. v. Boockvar*, No. 20-cv-2078, 2020 WL 6821992 (M.D. Pa. Nov. 21, 2020); *Donald J. Trump for President, Inc. v. Boockvar*, No. 20-cv-966, 2020 WL 5997680 (W.D. Pa. Oct. 10, 2020); *Metcalfe v. Wolf*, No. 636 M.D. 2020, 2020 WL 7241120 (Pa. Commw. Ct. Dec. 9, 2020); *Kelly v. Commonwealth*, 240 A.3d 1255 (Pa. 2020); *In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058 (Pa. 2020); *In re Canvassing Observation*, 241 A.3d 339 (Pa. 2020); *In re Nov. 3, 2020 Gen. Election*, 240 A.3d 591 (Pa. 2020).

contrary instruction in Pennsylvania's election code. Compl. ¶¶ 220–222, 224, 232(c). But Pennsylvania's highest court ruled that the election code does not require that minor defects in mail-in ballots disqualify a ballot. *In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058, 1078 (Pa. 2020), *cert. denied,* No. 20-845, 2021 WL 666798 (Feb. 22, 2021). And Pennsylvania's election code "says nothing about what should happen if a county notices these errors before election day." *Donald J. Trump for President, Inc. v. Sec'y of Pennsylvania*, 830 F. App'x 377, 384 (3d Cir. 2020). Rather, "[s]ome counties stay silent and do not count the ballots; others contact the voters and give them a chance to correct their errors." *Id.* Either is permitted under the election code, and allowing counties to choose is "perfectly rational." *Donald J. Trump for President, Inc. v. Boockvar*, No. 20-cv-2078, 2020 WL 6821992, at *12 (M.D. Pa. Nov. 21, 2020).

Elsewhere, plaintiffs recycle allegations that certain counties denied poll watchers access needed to observe the tallying of mail-in votes, supposedly in violation of state law. Compl. ¶¶ 232(c)-(d). Here, again, Pennsylvania's highest court definitively ruled that the named counties had provided all the access required under Pennsylvania law. *See In re Canvassing Observation*, 241 A.3d 339, 349–51 (Pa. 2020), *cert. denied,* No. 20-845, 2021 WL 666798 (Feb. 22, 2021).

Plaintiffs next allege that after the Supreme Court of Pennsylvania ruled, for the 2020 general election only, that Pennsylvania's Constitution required a three-day extension of the statutory deadline for counties to receive mailed ballots, *Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 369-72 (Pa. 2020), *cert denied*, 141 S.Ct. 732 (Mem) (2021), Pennsylvania failed to segregate the ballots received during the court-ordered grace period. Compl. ¶ 226. That is false. Pennsylvania not only segregated ballots received during the grace period—which are

3

insufficient to affect the outcome of any federal election—but those ballots remain segregated and have not been included in the reported results of the presidential election. *See* Department of State, Official Returns, https://www.electionreturns.pa.gov/ (notifying the public that "[t]he vote totals for President and Representative in Congress do not include any votes from mail ballots received between 8 p.m. on election day and 5 p.m. the following Friday").

By falsely characterizing Pennsylvania law's and election administration, plaintiffs have brought a lawsuit characteristic of the many other flawed suits that have preceded it.

## LEGAL STANDARD

Plaintiffs bear the burden of establishing a court's personal and subject matter jurisdiction, and can defeat a motion to dismiss under Rule 12(b)(1) or Rule 12(b)(2) only if the complaint's well-pleaded allegations, taken as true, establish that the court has jurisdiction. *Dermansky v. Univ. of Colorado*, 445 F. Supp. 3d 1218, 1220 (D. Colo. 2020); *Zvelo, Inc. v. Check Point Software Techs., Ltd.*, 418 F. Supp. 3d 664, 668 (D. Colo. 2019).

Rule 12(b)(6) authorizes a court to dismiss an action if the complaint does not include "enough facts to state a claim to relief that is plausible on its face." *Wilson v. Pauling*, 457 F. Supp. 3d 965, 971 (D. Colo. 2020) (cleaned up). Courts need accept only well-pleaded allegations as true—conclusory statements do not enjoy the same presumption. *Id.*

## ARGUMENT

This Court does not have jurisdiction over the claims against Governor Wolf and Acting Secretary Degraffenreid because neither defendant is subject to personal jurisdiction in Colorado, because the Eleventh Amendment immunizes each of them, and because no plaintiff has Article III standing. On top of these jurisdictional defects, this case must be dismissed because plaintiffs fail to state a plausible claim to relief.

### I. This Court Lacks Personal Jurisdiction over Governor Wolf and Secretary Acting Degraffenreid

A district court may not exercise jurisdiction over an out-of-state defendant unless the plaintiff establishes that the State in which the court is based would allow the exercise of jurisdiction, and also that exercising jurisdiction would not offend the Due Process Clause. *C5 Med. Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319, 1322 (10th Cir. 2019). Because Colorado asserts jurisdiction over out-of-state defendants to the maximum extent allowed under the Due Process Clause, the two inquiries are the same here. *Id.*

Due process allows jurisdiction over an out-of-state defendant only if "the defendant purposefully established minimum contacts within the forum State and the assertion of personal jurisdiction would comport with fair play and substantial justice." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (cleaned up). An out-of-state defendant whose contact with the forum State is "continuous and systematic" may be subject to that State's jurisdiction for all purposes. *Id.* at 903–04. Otherwise, case-specific jurisdiction is limited to when the out-of-state defendant has "purposefully directed its activities at residents of the forum state," and the plaintiff's injuries arise from those forum-related activities. *Id.* (cleaned up).[4]

Here, all Governor Wolf's and Acting Secretary Degraffenreid's allegedly unlawful acts happened in Pennsylvania. *See* Compl. ¶¶ 214–257. Those same acts pertained only to the casting and counting of ballots from Pennsylvania residents. *Id.* Administering an election in Pennsylvania is not activity directed at Colorado.

---

[4] Even if either defendant had any contact with Colorado, plaintiffs still must demonstrate the exercise of personal jurisdiction would not "offend traditional notions of fair play and substantial justice." *Old Republic*, 877 F.3d at 908. Plaintiffs could not do so here. The claims in this case have repeatedly been unsuccessfully litigated in forums in which defendants are subject to the court's personal jurisdiction.

While plaintiffs allege that venue is proper in this court because the relevant acts happened in Colorado, *id.* ¶ 35, the complaint's actual allegations contradict that statement, *id.* ¶¶ 214–257. Just two plaintiffs are Colorado residents. *Id.* ¶¶ 8, 12. Those two submitted an affidavit and statement, respectively, in support of the complaint. *See* Compl., Ex. 3, Cutunilli Decl., ECF No. 1-4; Compl., Ex. 7, Yarbrough Decl., ECF No. 1-8. Neither document contends that Governor Wolf or Acting Secretary Degraffenreid directed any activity at them or at Colorado. Instead, plaintiff professes a number of conspiratorial beliefs about Facebook's political influence and about how Dominion's voting machines function. *See generally* Cutunilli Decl. The other expresses only a feeling that "reported 'irregularities' with Dominion machines could have affected the voting process" in Pennsylvania. Yarbrough Decl. ¶ 22.

This Court previously has concluded that it cannot exercise jurisdiction over out-of-state government officials for acts that transpired outside Colorado. In *Taylor v. Casper City Council Corp. Members*, a suit against Wyoming officials was dismissed because "all of the acts of both the State and Local Government Defendants of which Plaintiff complains occurred in Wyoming pursuant to their capacities as government officials or employees of the State of Wyoming." No. 10-cv-127, 2010 WL 1904541, at *3 (D. Colo. Apr. 14, 2010), *report and recommendation adopted sub nom. John-Arthur v. Casper City Council Corp. Members*, No. 10-cv-127, 2010 WL 1856338 (D. Colo. May 7, 2010). Similarly, in *Cohen v. Waxman*, a suit against a U.S. Congressman was dismissed because the plaintiff did not "allege or demonstrate that [the defendant] conducted any activities in Colorado or had any contact with him in Colorado." No. 08-cv-2188, 2009 WL 3390487, at *5 (D. Colo. Oct. 21, 2009). Instead, "[a]ll of the events constituting the alleged unconstitutional conduct occurred in Washington, D.C." *Id.*

As in these two earlier cases, neither Governor Wolf nor Acting Secretary Degraffenreid is subject to jurisdiction in Colorado for acts that occurred in Pennsylvania, and bore only on votes cast in Pennsylvania.

## II. The Eleventh Amendment Divests This Court of Jurisdiction

Separately, this Court lacks jurisdiction because the "Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state." *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013). State officials—such as Governor Wolf and Acting Secretary Degraffenreid—sued in their official capacity enjoy the same immunity. *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019).[5]

An exception to this immunity, first recognized in *Ex Parte Young*, 209 U.S. 123 (1908), allows suits against "individual state officers acting in their official capacities" to proceed "if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief." *Williams*, 928 F.3d at 1214. The principle behind this exception is that "an unconstitutional

---

[5] The complaint's caption names Governor Wolf and then-Secretary Boockvar as defendants being sued "individually." If that designation might suggest defendants are being sued in their personal capacity, the complaint otherwise signals that defendants are instead named in their official capacity. The complaint explicitly references *Ex Parte Young*'s exception to Eleventh Amendment, Compl. ¶ 243, an exception relevant only if defendants are being sued in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (explaining defenses available in personal- and official-capacity suits). Later, the complaint alleges that defendants' unconstitutional acts "stripped" them of their official capacity. Compl. ¶¶ 249–255. This allegation both invokes the principles animating *Ex Parte Young* and clarifies what plaintiffs mean by suing Governor Wolf and then-Secretary Boockvar "individually."

If, however, plaintiffs intend to sue defendants personally, plaintiffs' claims must be dismissed because, among all the other flaws, the complaint fails to allege any unlawful act by the Governor or Secretary specifically. In a personal-capacity suit, a defendant is liable only for her own acts. *Kentucky*, 473 U.S. at 166. And even if plaintiffs had made those allegations, defendants would be entitled to qualified immunity. Qualified immunity protects state officials sued in their personal capacity when the constitutional right allegedly violated was not clearly established at the time of the relevant conduct. *Starkey ex rel. A.B. v. Boulder Cnty. Soc. Servs.*, 569 F.3d 1244, 1263 n.4 (10th Cir. 2009). That is true here. Indeed, plaintiffs' federal claims depend on state actors having flouted state law. But the challenged acts were endorsed by the Supreme Court of Pennsylvania as consistent with, or compelled by, Pennsylvania law. If executing state law as interpreted by the state's highest court violates a federal right because, in a federal court's view, state actors in fact violated state law, that right is not clearly established. Instead, such a right would radically alter foundational principles of federalism as the Supreme Court "repeatedly has held that state courts are the ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).

7

statute is void, and therefore does not impart to the official any immunity from responsibility to the supreme authority of the United States." *Green v. Mansour*, 474 U.S. 64, 68 (1985).

Plaintiffs' complaint suggests this exception applies here. Compl. ¶ 243. But the exception identified in *Ex Parte Young* permits suits seeking prospective relief; the Supreme Court has refused to extend the exception to suits seeking retrospective relief. *Green*, 474 U.S. at 68. The relief plaintiffs ask for here, including damages, is retrospective. Labeling some requests as seeking "equitable" relief, as plaintiffs do, does not avoid the Eleventh Amendment. *Edelman v. Jordan*, 415 U.S. 651, 666–68 (1974).

The 2020 election is over, and a new president has been inaugurated. There are no ongoing actions to enjoin, so the Eleventh Amendment bars this suit.

## III. This Court Lacks Jurisdiction Because No Plaintiff Has Standing

Article III limits a federal court's jurisdiction to cases in which the plaintiff has an actual stake. *Defs. of Wildlife v. Everson*, 984 F.3d 918, 944–45 (10th Cir. 2020). For a plaintiff to satisfy that standard, she must demonstrate that the court can redress a concrete and particularized injury caused by the defendant. *Id.* at 945. An injury is not particularized, and thus insufficient to confer standing under Article III, if it is a generalized grievance. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 n.3 (2014).

Trying to satisfy their constitutional burden, plaintiffs—some of whom admit to not voting, *see* Compl., Ex. 1, O'Rourke Decl. ¶ 11, ECF No. 1-2; Yarbrough Decl. ¶ 9—allege that they have been injured by Governor Wolf's and Acting Secretary Degraffenreid's allegedly unconstitutional acts because those acts diluted, diminished, or disadvantaged plaintiffs' votes. Compl. ¶¶ 304, 319–320, 332, 343, 353, 355. As a factual matter, plaintiffs' allegations are nonsensical: No plaintiff claims to have voted in Pennsylvania, so no plaintiff could have had his or her vote compromised by the actions of Governor Wolf or Acting Secretary Degraffenreid.

8

What is more, as with every other part of this case, plaintiffs' theory of standing already has been rejected this election cycle. Complaints of vote dilution are generalized grievances, incapable of conferring standing, if the supposed disadvantage derives from actions of state government that affect all voters equally. *Wood v. Raffensperger*, 981 F.3d 1307, 1314–15 (11th Cir. 2020); *Bognet v. Sec'y Commonwealth of Pa.,* 980 F.3d 336, 349–50, 355–60 (3d Cir. 2020). Plaintiffs readily concede this case is no different, asserting the actions of which they complain injured "every registered voter in the country." Compl. ¶ 319. Likewise, a stake in the offices of President and Vice President, Compl. ¶¶ 305, 343, is an insufficient basis to challenge the administration of a state's election, *see Texas v. Pennsylvania*, No. 22O155, 2020 WL 7296814, at *1 (U.S. Dec. 11, 2020) (rejecting argument that Texas's stake in federal officer holders confers "a judicially cognizable interest in the manner in which another State conducts its elections").

To the extent that plaintiffs claim their interest in this litigation is ensuring that all voters may exercise the right to vote for President and Vice President in a manner consistent with the Constitution, Compl. ¶ 305, it is similarly insufficient to confer standing. An interest that "only lawful ballots are counted" or an interest in seeing that "government be administered according to the law" are generalized interests that do not permit standing. *Wood*, 981 F.3d at 1314; *see also Bognet*, 980 F.3d at 348–49. At times, plaintiffs use conclusory labels—saying the injuries they have suffered are "individual and personal," Compl. ¶ 304—but "it does not follow from the labeling of the right to vote as 'personal' . . . that any alleged illegality affecting voting rights rises to the level of an injury in fact." *Bognet,* 980 F.3d at 358. Because neither defendant took any action that injured any plaintiffs' right to vote, or injured any legally cognizable interest any

plaintiff had in the administration of the 2020 election, plaintiffs lack standing and this action must be dismissed.

## IV. Plaintiffs Fail to State Any Claim that Could Allow Relief

In addition to these jurisdictional problems, plaintiffs have not plausibly alleged any claim to relief. Plaintiffs' first three counts invoke 42 U.S.C. §§ 1983, 1985, 1986, and 1988 to vindicate purportedly infringed constitutional rights.[6] But a viable claim under those statutes depends on the violation of a constitutional right. None of the three counts meets that predicate.

Count I alleges that the plaintiffs who actually voted did so in an election in which state actors in distant states—including Pennsylvania—violated the Constitution's Electors Clause by modifying election laws passed by state legislatures. Compl. ¶¶ 295–296, 305–308. For this count, plaintiffs allege that governors and state cabinet secretaries, who have no legislative responsibilities, legislated rules that governed the 2020 election. *Id.* ¶¶ 296, 308, 311. But the complaint contains no allegation identifying any way in which a defendant did so. Plus, as has been repeatedly and definitively concluded, Pennsylvania's election officials administered the 2020 election consistent with Pennsylvania's constitution and election code. *See generally In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058; *In re Canvassing Observation*, 241 A.3d 339; *In re Nov. 3, 2020 Election*, 240 A.3d 591; *Pa. Democratic Party*, 238 A.3d 345; *Bognet,* 980 F.3d 336; *Donald J. Trump for President*, 830 F. App'x 377.

To the extent that plaintiffs argue that a state's election code is not subject to a state's constitution, Supreme Court precedent forecloses that argument. A state legislature's authority for the manner in which elections for federal office are conducted does not empower them to act

---

[6] 42 U.S.C. § 1988 does not provide a cause of action. *Brown v. Reardon*, 770 F.2d 896, 907 (10th Cir. 1985).

"in defiance of provisions of the State's constitution." *Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 576 U.S. 787, 818 (2015). That is true because, as has long been understood, the exercise of a state's legislative power is the state's "supreme authority, except as limited by the constitution of the state." *McPherson v. Blacker*, 146 U.S. 1, 25 (1892). Therefore, remedying a conflict between Pennsylvania's election code and its constitution, as the Supreme Court of Pennsylvania did when it extended the deadline for counties to receive mailed ballots, does not violate the federal Constitution.[7]

Earlier this election cycle, the Supreme Court was presented with the exact argument obliquely made here, by parties asking that court to vacate the Supreme Court of Pennsylvania's decision ordering the three-day grace period. The Supreme Court declined to do so. *Republican Party of Pennsylvania v. Degraffenreid*, No. 20-542, 2021 WL 666401 (Feb. 22, 2021) (denying petition for a writ of certiorari). Supreme Court precedent, then, still forecloses the constitutional theory that plaintiffs advance here.

Count II contends that Governor Wolf and Acting Secretary Degraffenreid violated both the Fourteenth Amendment's Equal Protection Clause, Compl. ¶¶ 330–333, and the Fifteenth Amendment, Compl. ¶ 336. Neither claim has merit.

The Equal Protection Clause prohibits every state from denying "any person *within its jurisdiction* the equal protection of the laws." U.S. CONST. amend XIV, § 1 (emphasis added). Individuals outside Pennsylvania, such as plaintiffs, may not complain of unequal treatment under Pennsylvania laws that do not apply to them.

If any plaintiff were subject to Pennsylvania's election laws, the complaint still would fail to state a violation of the Equal Protection Clause. Assuming plaintiffs' argument is that state

---

[7] Even if remedying such a conflict violates the Electors Clause, plaintiffs are not the parties to vindicate that constitutional interest because they "are not the General Assembly, nor do they bear any conceivable relationship to state lawmaking processes." *Bognet*, 980 F.3d at 350.

11

officials created favored groups of voters by failing to compel counties to uniformly exercise statutory discretion, *see* Compl. ¶¶ 331–332, that claim is untenable because "[r]easonable county-to-county variation is not discrimination." *Donald J. Trump for President*, 830 F. App'x at 388. "Even when boards of elections 'vary ... considerably' in how they decide to reject ballots, those local differences in implementing statewide standards do not violate equal protection." *Id.* (quoting *Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 635–36 (6th Cir. 2016)). Assuming instead that plaintiffs invoke the prohibition against race-based classification, Compl. ¶¶ 335–343, their claim cannot survive because plaintiffs do not allege any such classification. Indeed, plaintiffs do not allege that they were treated differently from one another, or that any subset of plaintiffs was treated differently than anyone else.

The Fifteenth Amendment guarantees that the right "to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude." U.S. CONST. amend XV, § 1. Here, plaintiffs' claim must be dismissed because plaintiffs do not allege that any defendant burdened or restricted a plaintiff's right to vote in any way, let alone because of race.[8] Instead, plaintiffs complain of actions that *allowed* others to vote. Compl. ¶¶ 217, 219–220, 224–225. But "[e]xpanding the right to vote for some residents of a state does not burden the rights of others." *Donald J. Trump for President*, 2020 WL 6821992, at *12. Of course, neither Governor Wolf nor Acting Secretary Degraffenreid could have burdened any plaintiff's right to vote, as no plaintiff votes in Pennsylvania. Compl. ¶¶ 6–13.

Count III alleges that Pennsylvania officials violated the Fourteenth Amendment's due process protections because those officials unfairly administered the election in ways that both

---

[8] Two plaintiffs did not vote in the 2020 election. One admits that he also did not vote in prior elections, and that those decisions reflected his own "firmly held belief." O'Rourke Decl. ¶ 11. The other admits not voting because of his own doubt that voting matters. Yarbrough Decl. ¶¶ 9–10.

debased election standards and favored one candidate over another. Compl. ¶¶ 359–361. A state's election administration implicates the Due Process Clause "only in the exceptional case where a state's voting system is fundamentally unfair." *Curtis v. Oliver*, 479 F. Supp. 3d 1039, 1133 (D.N.M. 2020) (cleaned up). Garden variety irregularities do not amount to fundamental unfairness. *Id.* at 1133–34 (citing *Griffin v. Burns*, 570 F.2d 1065, 1076 (1st Cir. 1978)).

Plaintiffs do not allege facts evidencing fundamental unfairness. Plaintiffs' claims of unfairness depend on identifying state-sponsored deviations from the election code, but plaintiffs misrepresent what Pennsylvania's election code requires. *Supra* Background. As Pennsylvania's Supreme Court conclusively ruled, Pennsylvania's election code does not permit disqualifying votes based on signature verification, *In re Nov. 3, 2020 Election*, 240 A.3d at 611, does not require disqualifying ballots for technical errors on a ballot's envelope, *In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d at 1078, and no county denied a poll watcher the access required under state law, *In re Canvassing Observation*, 241 A.3d at 349–51. The United States Supreme Court denied a petition for certiorari seeking review of all three state-law decisions. *Trump v. Degraffenreid*, No. 20-845, 2021 WL 666798 (Feb. 22, 2021). Plaintiffs' contrary factual statements about Pennsylvania law are wrong.

As to the extension of the receipt deadline for mail-in votes, there is no allegation, nor could there be, that that generally applicable modification lowered election standards or favored one candidate. Moreover, that small group of ballots did not factor in the final tally of votes.

Next, plaintiffs allege that on November 2 Pennsylvania reported having mailed out 2.7 million ballots, but on November 4 reported having mailed out 3.1 million ballots, leaving an unexplained increase of 400,000 ballots. Compl. ¶ 231. But plaintiffs, and the report they cite for these statistics, is misleading. Pennsylvania has separate laws governing no-excuse, mail-in

13

ballots and absentee mail-in ballots. 25 Pa. Stat. § 3146.6 (absentee); 25 Pa. Stat. § 3150.16 (no-excuse). Plaintiffs' allegations conflate different numbers, and do not acknowledge that Pennsylvania maintains two distinct forms of mail-in ballots. By October 27, Pennsylvania had mailed 3.1 million ballots total. Of those, 2.7 million were no-excuse mail-in ballots—the cited number. Another 400,000 absentee ballots had been mailed, too. The numbers add up.

Similarly, plaintiffs note that the same misguided report on which they rely for discrepancies in the total number of ballots mailed also reported that Pennsylvania's election registry failed to log the date that about 9,000 ballots were mailed to voters, logged another 58,000 ballots as having been returned by a voter before having been mailed, and logged about 51,000 ballots as having been returned the day after being mailed. Compl. ¶ 229. The report plaintiffs cite uses these numbers to conclude that "it is IMPOSSIBLE for anyone to contend that fraud did not occur" in Pennsylvania elections. Letter from Rep. Ryan to Rep. Perry (Dec. 15, 2020).[9] Plaintiffs' claims against defendants allege constitutional violations, not fraud. The alleged incongruities, then, have no relevance here.

In any event, Pennsylvania allows voters to apply for a no-excuse mail-in ballot in person and return the ballot in person, even doing so all at once. 25 Pa. Stat. § 3146.5(b)(2). Given that option, 51,000 ballots having been returned the day after they were mailed is not plausibly evidence of anything untoward. For the rest of the reportedly anomalous figures, neither plaintiffs nor the cited report supplies any details that might suggest the existence of fraud with the specificity required under Federal Rule of Civil Procedure 9(b). Indeed, neither offers *any* details suggestive of fraud. The noted discrepancies are best explained as human error.

---

[9] http://www.repfrankryan.com/Display/SiteFiles/390/OtherDocuments/2020/Scott%20Perry%20Election%20Irregularities%20Letter%2012.15.2020.pdf

Finally, Count VI, through which plaintiffs seek a declaratory judgment for defendants' purportedly unconstitutional acts, fails for the same reasons as Counts I–III: Plaintiffs have not alleged any unconstitutional acts. And Count VII must be dismissed because "permanent injunctive relief" is not a cause of action; injunctions are remedies available to plaintiffs who have a suffered a legally redressable injury. *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1088 (D. Colo. 2018). That is not the case here.

## CONCLUSION

Because this court lacks both personal and subject matter jurisdiction, and because plaintiffs have not pleaded any claim entitling them to relief, this case must be dismissed.

Dated: March 18, 2021

Respectfully submitted,

Josh Shapiro
Attorney General
Commonwealth of Pennsylvania

Michael J. Fischer
Chief Deputy Attorney General

/s/ Jacob Boyer
Jacob Boyer
Deputy Attorney General
Pennsylvania Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
(267) 768-3968
jboyer@attorneygeneral.gov

*Attorneys for Governor Tom Wolf and Acting Secretary of the Commonwealth Veronica Degraffenreid*

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2021 I electronically filed the foregoing Motion to Dismiss and Memorandum in Support of Motion to Dismiss with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Jacob Boyer
Jacob Boyer